In the Matter of William Harold
SPAIN, Debtor.

John P. WHITTINGTON, Trustee of the Estate of William H. Spain, Plaintiff,

v.

GILBRALTER SAVINGS & LOAN ASSOCIATION, North Shelby County Fire District, Tax Collector of Shelby County, and Mary P. Spain, Defendants.

Bankruptcy No. BK 79 3543.
Adv. No. 83 1122.

United States Bankruptcy Court,
N.D. Alabama, S.D.

Feb. 5, 1988.

Milton G. Garrett, Birmingham, Ala., for debtor.

John P. Whittington, Birmingham, Ala., trustee.

J.N. Holt, Birmingham, Ala., for trustee.

Toffel & Wainscott, Birmingham, Ala., for Mrs. Spain.

## MEMORANDUM OPINION

STEPHEN B. COLEMAN,
Bankruptcy Judge.

The mystery in this case is, "where is Mrs. Spain's right of survivorship?" and if she has lost it, "how did she do it"?

An apology must go to the Court of Appeals for not properly bringing before the Court the facts which rival the confusion discussed by Dickens in his novel, *Bleak House.* There were many ways to decide this case, but the Court conceived that the unanswered question of the trustee's lack of title needed to be dealt with, and was one of the main reasons for denying the trustee's Complaint.

Mrs. Spain is a long-time school teacher. She purchased her home with her husband, within walking distance of the Mountain Brook High School where she was teaching, on the 13th day of August, 1973. At the time of the purchase of their home, due to the confusion in the law and its unsettled state, the Spains employed a reputable title lawyer to draft the deed, expressing their desire to be sure that if one died, the other would, by operation of law, succeed to full ownership without further court action and despite what the other, unilaterally, would do. The deed followed form 5 described by Circuit Judge Carl in his article hereafter discussed, and as drafted, contained the following language in the granting clause, "for and during their joint lives and upon the death of either of them, then to the survivor of them in fee simple, together with every contingent remainder and right of reversion", and the following language in the habendum clause, "for and during their joint lives and upon the death of either of them, then to the survivor of them in fee simple, and to the heirs and assigns of such survivor forever, together with every contingent remainder and right of reversion," making the language in form 5 and the language in the Spain deed identical, and we quote from Judge Carl's article as follows:

That language clearly creates a concurrent ownership and a survivorship interest. It's not as clear which one it creates and thus whether such survivorship interest is destructible or indestructible. The language uses the word "joint" in its reference to the "joint lives" of the grantees, but it also provides that upon the death of one of the grantees the interest will pass to the survivor "in fee simple". The deed also refers to contingent remainders. Technically, under a joint tenancy the survivor takes nothing by survivorship because he had always owned the whole. The death of the other joint tenant merely removes an impediment to the survivors (sic) complete ownership. The other deeds that create joint tenancies do use language to the effect that if one grantee survives the other "the entire interest in fee simple shall pass to the surviving grantee," but those deeds clearly establish that they intended to create a joint tenancy, with right of survivorship. The language in the fifth form will very likely have to be interpreted by the courts some day and the courts may very well look beyond the language in the deed to other evidence in order to determine the intent of the parties at the time the deed was executed.[1]

---

1. Judge J.D. Carl, Joint Tenants with Right of Survivorship, Alabama Bar Institute for Continuing Legal Education—Real Estate Seminar, III—9, 10 (Oct. 25, 26, 1984).

If the purchase had been made nine months earlier, these questions would not have arisen and many questions raised by this case would not need to be dealt with.

The Spains paid Eleven Thousand Two Hundred and no/100 Dollars ($11,200.00) cash and executed a purchase money mortgage for Forty Four Thousand Eight Hundred and no/100 Dollars ($44,800.00), with monthly payments of approximately Three Hundred to Four Hundred and no/100 Dollars ($300.00 or $400.00). They executed a second mortgage on the house to Peoples Bank & Trust, Booneville, Mississippi, for Fifteen Thousand and no/100 Dollars ($15,-000.00), and at the time of bankruptcy, had no equity.[2]

William Harold Spain filed a Chapter 7 petition on the 9th day of October, 1979, and John Whittington qualified and served as Trustee. Although Spain claimed the home exempt, the trustee apparently never dealt with this claim of exemption and this fact is discussed later in this Opinion.

Mr. Spain had been in the automobile sales business with his father in Mississippi. The Court has struggled with the bankruptcy case through eleven adversary proceedings, as well as a suit between Spain and Nissan Motors, which ended up in a trial by jury in the District Court after several years. There were other suits involving Spain in the Mississippi State Courts and an administrative matter involving considerable litigation is still pending in the state court in Mississippi.

The trustee has accumulated a very small cash estate, but the case is essentially no-asset unless the trustee can sell the home.

In the eight years of the trustee's tenure, no effort was made by the trustee to gain possession of the real estate. He testified he drove by the house in his car with a real estate agent, Jane Clements, on one occasion, but never went into the house.

Rarely has such a controversy been created by a decision dealing with the important question of the title to land as by the case of *Nunn v. Keith,* 209 Ala. 518, 268 So.2d 792 (1972).

As explained in *Nunn,* the law recognizes two estates in land, among others, by which a husband and wife may hold title to their home, both dating from the English common law. In 1945, the Alabama legislature revived survivorship by joint tenancy by amending Title 47, § 19 of the Code of Alabama 1940, by adding as follows:

... provided, however, that in the event it is stated in the instrument creating such tenancy, that such tenancy is with right of survivorship, or other words used therein showing such intention, then upon the death of one joint tenant, his interest shall pass to the surviving joint tenant or tenants according to the intent of such instrument. Code of Alabama, 1940 (Recomp.1958), Title 47 Section 19 [Code of Alabama 1975 Section 35-4-7.]

One of the purposes was to protect the wife by insuring her a safe ownership of a home for her life at the possible disadvantage of the husband's would-be heirs, including sometimes his children.

The "right of survivorship" was held indestructible in the case of *Bernhard v. Bernhard,* 278 Ala. 240, 177 So.2d 565 (1965), and immune from any ex parte acts of the husband, but subject to their joint voluntary desire. This statutory indestructibility was nullified by *Nunn v. Keith,* supra, holding that certain ex parte acts by the husband alone could deprive the wife of her rights. Simply put, *Nunn* returned to joint tenancy as defined at common law, in effect changing the law of Alabama and declaring a legislative purpose different from that declared in *Bernhard.* The *Nunn* decision created consternation, confusion and frustration among the Bench and the Bar. Lawyers had written hundreds of deeds for clients in the eight year "window" in reliance on *Bernhard.* All of this is revealed in the *Nunn* decision and many articles, treatises and opinions were

---

**2.** There is some evidence that the mortgage note was $40,000 at the time of bankruptcy.

written.[3]

Since the two named decisions give a comprehensive and learned discussion and history of joint tenancies, it should be sufficient to merely refer to them. Many articles, treatises and opinions have dealt with this subject and it is fair to say that confusion seems to reign supreme.

Justice James Coleman, in his dissenting opinion in the *Nunn* case foresaw of the discord, dismay and dissension that followed:

> I do not agree that the legislature intended to forbid the conveyance or devise of land to two or more persons during their joint lives with the entire fee to pass to the last survivor on the death of the other grantees. Such a conveyance creates an estate different from a common law joint tenancy. *Nunn v. Keith*, 268 So.2d at 801.

Since the title to land must go somewhere, it was declared that the destruction of the joint tenancy left the landowners as tenants in common. Chief Justice Torbert, in *Durant v. Hamrick*, 409 So.2d 731 (Ala. 1981), declared a solution for the dilemma by recognizing another form of concurrent ownership of property with provisions for survivorship, to wit:

> ... as tenants in common for life with cross-contingent remainders in fee, indestructible as at common law. *Durrant v. Hamrick*, 409 So.2d at 738.

Since joint tenancy is now destructible, and thereby anathema to lawyers, they have shunned the use of that method of holding land by husband and wife. It is hoped the legislature will come to the rescue. In the meantime, drafters of deeds do so at their peril and some malpractice suits have been filed.

J.N. Holt, attorney for the trustee, is perhaps the most resourceful and knowledgeable bankruptcy lawyer in the state. John Whittington, the trustee, is recognized as the authority on Chapter 11 petitions in Alabama and possibly the nation. There are newspaper articles to support these assertions. Mr. Holt openly asserts that the trustee is a co-owner with Mrs. Spain of her home and has the right to occupy, jointly, with her. Fortunately, for him, he has not tried to put this notion in practice.

Section 70(a) of the former Bankruptcy Act provided:

> The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this Act, except insofar as it is to property which is held to be exempt, ... Section 70(a) of the Bankruptcy Act of 1898 (11 U.S.C. Section 110).

The Reform Act of 1978 dropped this provision and instead created property of the estate by Section 541. Contrary to common understanding, property of the estate does not pass to the trustee. He has a right to sell non-exempt property in proper cases and circumstances under Section 363.

Presumably, the trustee's rights vested as of the date of the filing of the petition. Mr. Holt asserts the trustee acquired the debtor's half interest on that date and he continued to own, jointly with Mrs. Spain, sale or no sale. He has assumed no burdens, paid no taxes, interest or mortgage payments.

■ Unless he becomes a joint tenant or tenant in common by operation of law, the trustee must establish his status or title

---

3. Articles in addition to Judge Carl's have been authored by: John Gillon (Joint Titles with Survivorship, printed in Alabama Lawyer, 1961), W.D. Rollison and Elizabeth Davis Eshelman (Joint Ownership of Property in Alabama, printed in Alabama Lawyer, 1965), Jim Robinson (Title 47, Section 19, Alabama Code Construed to Allow Common Law Joint Tenancy When Parties Express Their Intent to Create Survivor-ship—Nunn Keith—Ala—, 268 So.2d 792 (1972) printed in Cumberland–Samford Law Review, 1972); also see article titled: Property—Concurrent Ownership—Common Law Joint Tenancy Recognized: The Intention to Create a Right of Survivorship Must Be Clearly Expressed and the Unity of Time Requirement is Eliminated, printed in 25 Alabama Law Review 85, (1973).

before commencing suit. Otherwise, he has no standing to maintain an action.

The trustee has three hurdles: (1) Settlement of the homestead. (2) The lack of trustee's title or tenancy, and (3) Equity in the property, which he must establish by evidence.

Unless there is equity in the property above the mortgages and encumbrances and the homestead exemption, the trustee can acquire no title or right to sell.

For more than ten years this Court has attempted to assess the damage done the trustee by the 1978 Act. It eliminated the order of adjudication with all its legal implications. Instead, it made the claim of exemptions in Schedule B–4 all important and self executing, and assured that exempt property never became property of the estate. This is embodied in Section 522(*l*) in the following words:

(*l*) The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. Unless a party in interest objects, the property claimed as exempt on such list is exempt, 11 U.S.C. Section 522(*l*),

and declared in *In re Adams*, 12 B.R. 540, 4 C.B.C.2d 1054 (B.Ct., D.Utah 1981) and *In re Keckler*, 3 B.R. 155, 1 C.B.C.2d 574 (B.Ct., N.D.Ohio 1980). The Reform Act leaves in force state procedures for contests of claims of exemptions, putting on the trustee the burden to litigate with the debtor improper claims of exemptions. Such is the scheme of the 1978 Reform Act with its mechanical aspects.

■ The trustee's assumption that he has become (he does not say when) a co-owner with Mrs. Spain is not only ridiculous, but presumptuous. The bankruptcy of Mr. Spain did not sever Mrs. Spain's right of survivorship.

The language in the granting clauses of the deed of conveyance in *Durant v. Hamrick*, supra, read as follows:

Grantors do hereby GRANT, BARGAIN, SELL AND CONVEY unto said Grantees ... as tenants in common and with equal rights and interest for the period or term that the said Grantees shall both survive and unto the survivor of the said Grantees, at the death of the other.... *Durant*, 409 So.2d at 732,

and the habendum clause in each of these conveyances read as follows:

TO HAVE AND TO HOLD the same unto the Grantees in the manner and interest as set forth and stated herein above. *Durant*, 409 So.2d at 732.

In attempting to resolve the issues presented to the Court in *Durant*, Justice Torbert stated:

What, then, are the nature and characteristics of the property interests created in the 1968 and 1969 deeds? The language clearly conveys to grantees "as tenants in common." *Alabama law favors tenancies in common over joint tenancies;* therefore, we hold that the grantees took title as tenants in common, and not as joint tenants ... (emphasis provided)

We are persuaded that Alabama should likewise recognize a form of concurrent property ownership as tenants in common which provides for survivorship. This form of concurrent ownership can be characterized as creating concurrent life estates with cross-contingent remainders in fee; or a tenancy in common for life with a contingent remainder in favor of the survivor. (citation omitted)

We hold that the 1968 and 1969 deeds in issue on this appeal did, as a matter of well established property law, create in the original grantees therein a form of concurrent ownership in property as tenants in common during the respective lives of the grantees with cross-contingent remainders in fee to the survivor. Accordingly, because such interests are indestructible by the act of one cotenant, the defendant, under the facts in this case, has no interest in the two parcels of real estate which are the subject of this appeal.

*In this case we simply recognize another form of concurrent ownership of property with provisions for survivor-*

*ship—as tenants in common for life with cross-contingent remainders to the survivor in fee, indestructible as at common law.* (emphasis provided) *Durant,* 409 So.2d at 736, 738.

*Johnson v. Keener,* 425 So.2d 1108 (Ala.,1983), apparently relied on by the Court of Appeals, did not involve a sale of division under Section 363(h) of the Bankruptcy Code. It involved a division of the lands by the consent of parties who hated each other and consented to a partition. It did not involve a homestead, husband and wife, or a trustee in Bankruptcy. Each party was trying to get as much of the land as he could and claim it all.

11 U.S.C., Section 522 of the Bankruptcy Code creates in the debtor a federal homestead exemption in real estate in the amount of Seventy–Five Hundred and no/100 ($7500.00) in the following language:

(a) In this section—

(1) "dependent" includes spouse, whether or not actually dependent; and

(2) "value" means fair market value as of the date of the filing of the petition or, with respect to property that becomes property of the estate after such date, as of the date such property becomes property of the estate.

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection ... Such property is— ...

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place; and

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a

tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law ...

(d) The following property may be exempted under subsection (b)(2) of this section:

(1) The debtor's aggregate interest, not to exceed $7,500 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, ...

(m) Subject to the limitation in subsection (b), this section shall apply separately with respect to each debtor in a joint case, 11 U.S.C. Section 522.

and it also creates a Seventy–Five Hundred and no/100 Dollars ($7500.00) exemption in the spouse, if the Bankruptcy Court undertakes to sell her interest under Federal Law.

The scheme of the 1978 Reform Act was to create property of the estate in Section 541 which included exempt property. However, Section 522(b)(2)(B), supra provided for the separation from property of the estate, exempt property.

 The property in this case was properly claimed as exempt on Schedule B–4 and uncontested. It is, therefore, exempt and never became property of the estate.

The trustee had no rights in the wife's interest in the homestead unless he acquired it as a joint owner or tenant-in-common with the wife. If he never acquired the husband's interest, he had no rights to proceed against the wife under Section 363(h).

Mr. and Mrs. Spain testified, extensively, on the 4th day of December, 1987, on the retrial of this matter on remand by the Court of Appeals.

Based on the findings, statement and conclusions in the foregoing opinion, the Court makes the following findings of fact and conclusions of law:

(1) The homestead claimed as exempt by the debtor is exempt under Section 522(*l*), no objections having been filed. See *In re Adams,* 12 B.R. 540, 4 C.B.C.2d 1054

(B.Ct., D.Utah 1981); *In re Keckler*, 3 B.R. 155, 1 C.B.C.2d 574 (B.Ct., N.D.Ohio).

(2) Under Section 522(b), the exempt homestead never became property of the estate.

(3) The trustee is authorized to use, sell or lease property of the estate only if such property is property of the estate and wholly non-exempt.

(4) The trustee never became a tenant-in-common or joint tenant with the wife.

(5) Section 363(f) is not a grant of power, but a limitation on the right of the trustee to sell.

(6) Under Section 363(f)(1), the trustee must find his title or power to sell under state law.

(7) Section 363(h), despite its apparent language to the contrary, does not create a right in the trustee to sell for division, except as title becomes vested in the trustee under state law.

(8) This reasoning is compatible with the holding in In re Livingston, 804 F.2d 1219 (11th Cir.1986).

(9) The trustee has no greater title by virtue of Section 363, 363(f) and 363(h).

(10) The trustee must establish his title and right to possession before resorting to Section 363(f) or (h).

(11) The Court of Appeals decided that the husband and wife were joint tenants, but did not hold that the trustee was a joint tenant, and

There are many reasons why the trustee of a husband in bankruptcy cannot sell the wife's home. Whether for division or otherwise, Section 363(h) contains this very wise and salient provision

... only if—

... (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners ...

11 U.S.C. Section 363(h)(3)

One of the grounds on which this Court may deny the trustee's right to sell is a finding by the Court that the detriment to the wife and loss of her home, in which she has lived and raised her children since 1973, does far outweigh any monetary benefit to the trustee, and

THE COURT, THEREFORE, SETS THIS CASE FOR FURTHER HEARING AND EVIDENCE on February 19, 1988, at 9:30 a.m. in Courtroom # 4, 500 South 22nd Street, Birmingham, Alabama, in order to make the following determinations of fact:

(1) To determine the amount of the second mortgage to Peoples Bank & Trust as of the date of bankruptcy;

(2) To determine whether the parties intended for Mrs. Spain to have a right of survivorship and/or a right of remainder or reversion; and

(3) To determine whether Section 363(h)(3) includes the "sentimental" or emotional value of a home and not just the monetary value. (For some discussion, see *In re Addario*, 53 B.R. 335 (B.Ct., D.Mass. 1985).